You have a few minutes to get settled. There's no easy way to do it. It's like a little microphone diaper. All right, so it looks like we're splitting the appellant's time. Mr. Rochenbach, you have eight minutes to open. Is that correct? And you're saving five for rebuttal? Yes, Your Honor. And have I pronounced your name correctly? Rochenbach. It's musical. Rochenbach. All right. Fire away. All right. Good morning. Bart Rochenbach on behalf of the appellants McNamara and Warren. The district court in this case entered summary judgment based exclusively on this court's opinion in Cawthorne v. Auto Owners. And GEICO has embraced Cawthorne solely in its answer brief. So we need to start there, I think. Cawthorne decided that – well, they made two decisions that are relevant here. Number one, Cawthorne created an excess judgment rule where the court decided that under Florida law, there must be some excess judgment rule requiring an excess judgment as a prerequisite to a bad faith case. The second thing Cawthorne did was to say that a jury verdict was required to have a judgment. Any judgment is not the result of a jury verdict, isn't really a judgment for purposes of bad faith. We got there through a case called Pereira v. USF&G, which was two certified questions by this court to the Florida Supreme Court on very related topics. The first question asked was, can a cause of action for bad faith be maintained where there is no excess judgment against the insured? The second question was, even if an excess judgment is not required, can a cause of action for bad faith be maintained when the insurer's actions did not result in increased exposure to the insured in excess of the insured's policy limits? Now the Florida Supreme Court did not answer those questions directly. They reworded it and avoided the first question entirely about whether an excess judgment is required. The Florida Supreme Court changed the question to, may a cause of action for bad faith be maintained when an insurer's actions were not a cause of the damages to the insured, or when the insurer's actions never resulted in exposure to liability in excess of the insured's policies? Now what you notice about that is that the Supreme Court never answered the question about whether a cause of action for bad faith exists, even without an excess judgment. In the Pereira opinion, they wrote twice that an excess judgment is not a prerequisite to a cause of action for bad faith. They wrote it twice. Even though they didn't answer the question that was asked, they wrote that twice. And then they said there are four ways to prove causation in a bad faith case. One is an excess judgment. The other is a Cunningham agreement. The third is a Koblenz agreement. And then the fourth is an equitable subrogation claim for an excess carrier can stand in the shoes of the insured and go against the primary carrier. But in all those instances, what it comes down to is can the insured prove that the actions of the insurance company did something to cause injury to the insured? That's bad faith. And the Pereira court also said that the list is not exclusive. It's not exhaustive. There may be other ways. Where did they say that? I think that's a really important point. I can't tell you the line and page. I'm sorry, Judge. Well, maybe you can tell me when you come back up. I'll look for it when, yes. Yes, Your Honor. Unless Mr. Steinberg can do that when he stands up here. So it's not exhaustive. There can be other ways of doing it. The second part that what Cawthorne said is that a verdict, a jury verdict was required to have an excess judgment. Now, it got there by looking at a single sentence in Jennings, which quoted McLeod v. Continental, where the court wrote that an excess judgment is a verdict which exceeds the policy limits. But nowhere in Florida law has a Supreme Court or any court said that a judgment is the same as a verdict or the verdict is the judgment. Thank you very much. Can I ask you a quick question about Cawthorne? So Cawthorne purports to stand for a principle or a rule, sort of a bright-line rule, that a judgment requires a verdict. But do you think Cawthorne was wrong on sort of the unique facts of the case there? I mean the settlement there seems, I don't know, collusive, maybe too strong a word, but no notice to the insurer. So was the result in Cawthorne wrong or just the rule that it purported to announce wrong in your view? Well, you know, the result could have been done differently and probably been correct. If the parties had moved for summary judgment on the violation of the insurance contract, you know, that agreement was entered into without the consent of the insurance company. So it was a violation of the policy, and it should have been thrown out immediately based on that only. But to answer your question about it, it looks a little collusive. They're friends. They came up with a number that seemed extraordinary, $30 million, $33 million total. And they did it all behind the back of the insurance company. Now, under those facts, that's a different situation. Here we have an offer of judgment that was sent to the insureds based on 768.79 Florida statutes. And the legislature created that as an effort to resolve cases. The legislature wants people to resolve their cases without a trial if they can. And the Supreme Court and every court in Florida has said we favor settlements. We want this to happen. So if we apply the district court's decision in this case where it says that you have to have a jury trial in order to get an excess judgment and that an excess judgment is required, that means that it has overridden the legislature on 768.79 and that no insured can ever accept a proposal for settlement or an offer of judgment. They're the same thing. It's offer of judgment under the statute. Proposal for settlement is the term the Supreme Court uses for the same thing. But it comes down to if an insured accepts that, then there's no bad faith case. So that means that every case has to go to a trial all the way through, even if everyone involved agrees that that's a waste of everybody's time. Wouldn't that be really bad for insurance companies? Because then insurance companies, they're not going to be able to settle for $200,000 over the policy limits. They're going to have to go to trial and be hit with a judgment for $4 million over the policy limits and then have to litigate the bad faith claim of that, right, instead of litigating the bad faith claim of a lesser judgment. It seems like the rule that Cawthorn adopted is actually really bad for insurance companies. I don't know that it is because the insurance company is still in charge of everything and they could agree with the insured that let's all accept this and we won't raise that issue and we acknowledge that this is a functional equivalent. Really, the insurance company has all the cards here and can handle it however it wants. It's the insured that has the problem. Because the insured, if the proposal for settlement is acceptable, they can't try to pressure the insurance company to take it and they're sort of stuck. I see my time is up. Mr. Steinberg has three minutes. I'm sorry. Go ahead, Judge Branch. I was just going to ask if Judge Branch has questions before you sit down. No. Okay. Very well. Thank you so much. All right, Mr. Steinberg, you're up for two minutes. May it please the Court, Brent Steinberg on behalf of the intervener and appellant, Kenneth Bennett, who is a judgment creditor in the court below. To first answer Judge Bratcher's question on Pereira, it's at footnote seven, and I'll just read it to you. We do not intend to limit the types of bad faith claims that may be brought in other cases. To only the case law discussed in this opinion, we discuss the case law only to determine whether the principles from prior bad faith case law may be relevant to the facts of this case. So Pereira didn't say that an excess judgment is only really a judgment if it's interpursuant to a verdict. No Florida court has ever said that. No Florida court has ever held that a verdict is a condition precedent to a bad faith claim, and it wouldn't really make any sense to do so either. Because a bad faith claim accrues upon entry of a judgment for more than the policy limits, not a verdict, a judgment. Any judgment for more than the policy limits is an excess judgment, and it doesn't matter whether that judgment was interpursuant to a bench trial, a jury trial, an arbitration, a proposal for settlement, as was in this case, or a stipulation. A judgment is a judgment, and if the judgment is legally enforceable against the insured or the insured successor, it constitutes redressable harm in the bad faith case. No jury, no court has ever required other than Cawthorn, and the court citing Cawthorn, no court has ever required a jury verdict as a condition precedent. Now up until Cawthorn, the only question was whether the insured suffered harm because of the insurance company's bad faith conduct. And that's why you normally need a judgment for more than the policy limits, because normally, without a judgment, there is no harm to the insured. Now there are exceptions to the general rule that an excess judgment is required in a bad faith case, the so-called functional equivalents, the Cunningham Agreements, Covalence Agreements, equitable subrogation cases, and so on. But we can ignore all of those functional equivalents here because we have a judgment for more than the policy limits that is valid, it is enforceable against the insured pursuant to the accepted proposals for settlement. So the bottom line is that because the insureds are legally obligated to pay judgments for more than the policy limits, they've suffered compensable harm to which they can hold GEICO accountable in this bad faith case. And I see my two minutes are up, but if the court has any questions for me. Judge Branch, do you have any questions? I do. Let me turn your attention. It's a case that was cited in the Appellee's Brief on page 25. It's one of our cases, Propal Act v. First Century Insurance. And in that case, we said while an insurer has a duty to act in good faith to offer the policy limits under appropriate circumstances to avoid exposing its insured to a judgment in excess of those policy limits, it has no duty on behalf of its insured to agree to a consent judgment in excess of policy limits and then subject itself to a suit for bad faith for the amount in excess of the policy limits. So if we were to agree with you that this consent judgment would, you know, would satisfy the requirements under Florida law, how would we file this with our Propal Act case? Well, my understanding of Propal Act, and it broke up, I think that was the case that you were saying. The insurer has no affirmative duty to agree to an excess consent judgment because if they agreed to it, then the insurer would be subjecting themselves to a suit for bad faith in the amount of the policy limits. So that actually supports our position that if the insurance company were to agree to an excess judgment, then that excess judgment could be enforceable against the insurer in the bad faith case despite the fact that it was entered by consent rather than by a jury verdict. Certainly the insurance company has control over the settlement and defense of the litigation under their contract, and normally the contract would preclude the insured from entering into any sort of agreement to settle the case without the insurance company's consent. But here that's just not an issue because the insured, excuse me, the insurer, GEICO, waived its policy defenses authorizing the insured to enter into the judgment. So I don't think there's really a conflict between Propal Act and the decision that we're asking this court to adopt. Yeah, and you're saying, I mean, just to unpack that and understand that, you're saying that that phrase supports your position because the reason we're saying there's no duty on the behalf of the insurance company is because the insurance company would be subjecting itself to a bad faith claim for excess judgment. And so the necessary implication of that is that if an insurance company does that, which the insurance company here did, then you have a bad faith claim based on the consent judgment. Correct. And it doesn't matter whether the insurance company is a party to that agreement or whether or not it's just authorizing. It's the fact that the agreement was authorized, that they authorized the insured to accept the proposals for settlement, which is dispositive of the question here, that there was no breach of the policy. The insured, therefore, were allowed to pursue this claim to try to hold GEICO accountable for the compensable harm that they suffered. And can you answer, to go to the point that Judge Branch raises, can you answer just a record question for me? If, let's say, let's say that the settlement proposal had just been outrageous, been well beyond anything that could have been recovered at trial. Could the insurance company have said, we don't think you should settle for that, we're not going to authorize a settlement for that? Or is that something that's outside of the insurance company's power to do? No, the insurance company could absolutely say that they did not agree or consent to the insured to enter into this agreement, that they have that power, they have that right of control. Every liability policy, including liability policy in this case, gives the insurance company a right of exclusive control over the handling of all settlement decisions. And it explicitly prohibits the insured from entering into settlements without the insurance company's consent. Here, GEICO just waived its right. Now, independent of that, even if, under the common law, if the judgment was unreasonable in amount, or if the agreement was collusive, as Judge Newsom suggested may have been the case in the Cawthorn case, or if it was tainted by bad faith or fraud, then the consent judgment would be unenforceable for that reason as well. There's just no evidence of that here in this case. And, in fact, GEICO's own counsel explicitly said, and it's in the record, I believe it's 162.19, or 162.15, counsel saying, we are not arguing that the amount of this judgment is unreasonable or that it was tainted by bad faith, fraud, or collusion. So there is simply no basis under Florida law to hold that this consent judgment is invalid as a matter of law. And, for that reason, we respectfully request that the court reverse and remand for additional proceedings. Okay. Thank you very much. Mr. Thompson, you're up for 15 minutes. May it please the Court. Jordan Thompson on behalf of GEICO. Your Honors, in this case, the Court should affirm the summary judgment that was entered in GEICO's favor, because as the District Court found applying this Court's decision in Cawthorn, the appellants did not recover an excess judgment or the functional equivalent. And the reason that's important is because what we're talking about here is the measure of damages in a third-party bad faith action. So you understand, of course, that we're not bound by Cawthorn? Yes, Your Honor. So let me ask you this. What's your best case for the proposition that an excess judgment must result from a verdict under Florida law? And so don't say Cawthorn. Yes, Your Honor. And, in fairness, don't say the Jennings footnote. Yes, Your Honor. So our position would be the analysis that Cawthorn did was from Pereira. Pereira was asked certified questions from this Court dealing specifically with whether, absent a jury verdict, could an agreement or a consent judgment be a valid basis or that judgment that's ultimately entered via a consent judgment support a bad faith claim or the damages in a bad faith claim. And so I would say Pereira. But what in Pereira says verdict? That's my real question, I guess. Well, they referenced the footnote in Jennings. So Pereira cites Jennings. Jennings cites McLeod. And I think that what the reference to a verdict is is because what we're talking about here is in a bad faith action, the damages aren't determined in the bad faith action. But so in McLeod, there was a verdict, right? McLeod was no. I think McLeod was yes. McLeod was a no. The claimant was not going to be responsible between an agreement by the insured. There was an agreement between the insured and the claimant that he would not be held responsible. So I believe McLeod. And I'd have to go back and look, Your Honor. Ultimately, the decision in McLeod was because the insured was never exposed to an excess judgment. So if I could step back to answer Your Honor's question. Yeah, sure. The reason we have the excess judgment rule is because the damages aren't determined in the bad faith action. The damages are set by ultimately a jury verdict. The insured is exposed to a jury verdict. So the courts will accept that because the insurer is going to be bound by that, those damages, based on the fact that that was determined by a jury. So let me ask you this. Assume the plaintiff in the underlying piece of litigation gets summary judgment. The case never goes to trial because the plaintiff gets summary judgment. Can that be an excess judgment? Summary judgment as to damages? Summary judgment as to the whole kit and caboodle, liability and damages. I believe it would be. Why? Because Cawthorne says it's got to be a verdict and you say Jennings says it's got to be a verdict. And Cawthorne says it has to be a verdict or the functional equivalent. And the functional equivalent would be a Cuttingham agreement where the insurance company is actually a party or, Your Honor, a Colvin's agreement where we're actually going to punish the insurance company for failing to defend its insured. And the basis, Your Honor, and I don't mean to cut you off. No, no, no, no. I just want to make sure I'm tracking that I'm following you. So when you use functional equivalent there, I thought Pereira said it had to be an excess judgment or the functional equivalent. Yes. Not that it's got to be a – not that Cawthorne said it's got to be a verdict or the functional equivalent. Cawthorne just said it's got to be a verdict come hell or high water, right? Well, Cawthorne says it has to be the judgment that results from judicial labor, which is the verdict. And the reason is, to go back to my point, Your Honor, is because the damages are set by the underlying action. We have to make sure that the court and Cawthorne made this rule. They didn't just create the excess judgment rule out of whole cloth. They relied on Pereira. There's the Cuttingham or there's the Jennings case, which expressly talks about the mechanism that the courts created. The Florida Supreme Court and Jennings said we created Cuttingham as a way for parties to forego the judicial labor of getting a verdict if they want to agree to it. And the insurance company has got to be part of that party and part of that agreement. And I will read for Your Honor specifically what Jennings said, and this is a year before Pereira. They said, in Cuttingham, we simply approved a procedure in which the parties, now the insurance company was a party to this action, could avoid the time and expense of going through a trial to obtain a final judgment. And following that procedure, the parties agree and the courts recognize that a stipulated final judgment has the same force and effect as a final judgment reached to the usual judicial labor of a trial when the parties agree that it shall. Now, again, the insurance company is a party to this. That's what one of the functional equivalents is, where the insurance company becomes a party. The court went on to say in Jennings, this is precisely what occurred here. The stipulation expressly states that it shall serve, quote, as a functional equivalent of an excess judgment. The parties agree to no conditions or limitations on the force and effect of that judgment. We hold that a judgment so stipulated is to be given the same force in a bad faith litigation as a final judgment reached upon a determination at trial, and this includes discovery. And this brings me to my point, and I apologize if I wasn't getting it out. The reason behind the excess judgment rule is because damages are set by this underlying judgment that was either through the judicial labor of a jury that decided that amount. The courts are going to be skeptical of when it's the two parties that are pursuing the bad faith action when they've went to and they've made an agreement, when they set the damages. Because in the bad faith action, it's a yes or no question whether the insurance company acted in bad faith. There is no recourse to— But wouldn't that issue be—I understand your point there, and that's the point I think motivating Cawthorn. But wouldn't that be a serious, serious problem in a Koblet situation where the insurance company isn't even around? It just seems like—it seems odd to me that there would be a rule that says when the insurance company isn't even around, isn't defending. Well, the parties can agree to that, and then they can sue for bad faith. But in a case like this one where the insurance company has notice, where it seems to be an arm's length negotiation, that these people can't sue for bad faith. One of them is clearly collusive, and Florida Supreme Court says you can do that. Here, there doesn't seem to be any collusion at all, and you're saying we can't do that. It just seems odd. Well, one, Your Honor, that's the express reason why Pereira, which is the Florida Supreme Court, decided the Koblet issue. The Koblet issue and the basis for holding the insurance company liable for that excess judgment is for the wrongful refusal to defend. And so they're essentially going to be punished for that wrongful refusal to defend, and that's what the Cawthorn court goes to the analysis. But here, though, I mean it's the basis for holding the insurance company liable would be for—I mean I'm not saying that you did this, but it would be for the bad faith refusal to settle. So, I mean, there's no—to me, one of those is a breach of duty to defend. It would have to be bad faith, breach of duty to defend. Here, it would have to be bad faith, failure to settle. What's the difference? Well, two, bad faith—the breach of the duty defends a contractual claim. But you wouldn't be liable, though, in a Koblet situation unless there was bad faith, right? You would have to prove bad faith first. And then once you prove bad faith, they automatically accept that agreement. And the issue is that the parties that are setting the damages are the two parties that are accusing the insurance company of bad faith. So that's why Cawthorn comes in and essentially says, you know, we're going to have to determine whether we accept or what type of agreements because it's pre-suit, it's pre-jury verdict. What type of agreements are we going to accept that aren't excess judgments? And the excess judgment isn't judgment in the broad terms of a judgment. It's broad terms in a third-party bad faith action, what is going to be the measure of damages. So we are comfortable saying that if it came through the judicial labor of a jury verdict, that that measure of damages is not going to be something that can be conclusive or anything like that. And then if I could read real quick, Your Honors, I think that this is—well, first of all, I think the factual distinctions that have been made about Cawthorn in this case are immaterial. Because if you look at the district court's opinion in Cawthorn, the insurance company in that case was aware of the agreement. And they actually responded and they said, we are not going to be a party to this. We are going to leave it to the insured and his counsel whether they want to enter into this agreement. And we will continue to offer our policy limits for indemnification and we'll continue to defend. So that factually is the exact same thing that GEICO did here. But the distinction is that GEICO here, while they may have waived their policy defenses or may have said that the insured didn't breach the policy by entering into this agreement, the consent judgment rule is independent of any terms of an insurer's policy. And what GEICO expressly said in this case, which is very similar to all the other district court opinions that have granted summary judgment on this issue, is that the insurance company said, we're not going to be a party. We're not going to agree to this. We're not going to be bound by this. And the reason that's important is because one of the functional equivalents is a Cunningham agreement. And so that's why the court in Jennings— There's some language in Pereira that supports the other side and I just want you to address it. One is this quote in Pereira on page 901 of, I forget which, maybe the Southern Reporter. It says, quote, although an excess judgment is not always a prerequisite to bringing a bad faith claim, the existence of a causal connection is a prerequisite. In other words, the claim damages must be caused by the bad faith. So it seems like you're arguing that an excess judgment is a prerequisite to bringing a bad faith claim when they say in the text that it's not a prerequisite. What do you say about that? I think an excess judgment is an essential element of plaintiff's claim and a bad faith claim because if the insurer doesn't suffer— How is that statement that you just—I mean, I just, you know, put it— As some judges have told me, you've got to put it down where the goats can eat it. So explain to me how the phrase you just said, that an excess judgment is part of their bad faith claim, is consistent with the Florida Supreme Court saying an excess judgment is not always a prerequisite to bringing a bad faith claim. Because what the Pereira court was deciding was we have an agreement and we have to decide whether an agreement that wasn't entered pursuant to a jury verdict is going to be the functional equivalent. And it's not always the functional equivalent, or it's not always—you don't always need an excess judgment if we have a functional equivalent. And the functional equivalence that the Florida Supreme Court laid out in Pereira was you should have a Cunningham agreement. Cunningham agreement, it would not—you would not have to have that prerequisite of a jury deciding the damages. Or you could have a covalence agreement. Or you could have, which is not factually the issue here, but an equitable subrogation claim either by an excess carrier— So you're saying when the Florida Supreme Court said it's not always a prerequisite, what it was mentioning was we've already identified these four areas where it's not a prerequisite. And I'm saying what I think in the context of the case, and perhaps respectfully to the Florida Supreme Court, it wasn't artfully stated. But what they're saying is you have to have an excess judgment. But that's not always a prerequisite if you can satisfy the functional equivalent. So the parties can agree, just like the court in Jennings said when they're discussing Cunningham, it's the procedure that we put in place that if you wanted to forego a trial, and that's—and everything related to a trial and a jury verdict, then you guys can come and you guys can agree to it. And that's what the functional equivalent would be—would be Cunningham. Okay, so what do you say about this language from footnote 7, which they just cited, where it says, we do not intend to limit the types of bad faith claims that may be brought in other cases to only the case law discussed in this opinion, i.e., Cunningham, Koblitz, etc.? Yeah. And what do you say about that? And I think if you go on to read, Your Honor, and it may not be right there, but it's within it. It says, but we are only discussing the law that we think is pertinent to the context of this case. And I think the context of that case, the Floresman Court didn't want to forego and say this is all bad faith claims. This is the context of an agreement. If we have a consent stipulation or a consent agreement, that's what we're limiting our conversation to. So we're going to talk about the types of agreements that we would be considering that would be the functional equivalent of an excess judgment. And the point of Pereira, the one thing that I want to bring to the Court's attention is that Pereira, part of the factual analysis of Pereira was that the agreement wasn't over and above all amounts of the insurance policy. There was an excess carrier involved. But what the Pereira Court stated, and this is going to be on page 902 of the opinion, we reject Pereira's argument that the $4 million is an excess judgment because the amount is in excess of the estate's primary policy limits. We have previously stated that, quote, an excess judgment is defined as the difference between all available insurance coverage and the amount of the verdict recovered by the injured party. And again, they cite Jennings. And I think that's important because that shows that ultimately the insurance coverage with the excess and the underlying covered the judgment. But they were still suing for bad faith because the underlying carrier's limits were lower than what the agreement was. And the Florida Supreme Court says, no, because you're talking about an agreement, we have to decide if this is going to be something that we're going to accept as an excess judgment because you guys agreed. And I'll just end it with this. Let me ask you this question real quick. So to Judge Brasher's, the passage that he was reading earlier, if Pereira suggests that the ultimate touchstone is a causal connection and an excess judgment is one way of demonstrating the causal connection in addition to these others that the court laid out, why isn't the rule sort of how do we get from there to the rule in Cawthorne that consent judgments categorically per se are out? Why isn't the rule that like, well, I don't know, some consent judgments that look collusive, they should be out because there there's no causation because there the insured brought the injury on itself or whatever, but that not every consent judgment is out. And I think because the Florida Supreme Court went through an analysis to actually name functional equivalents, they did analysis and said we're going to call this a cutting hemogram. Well, they didn't need to specify a functional equivalent exception to an excess judgment for something that's called a consent judgment, did they? They did if it was going to be the measure of damages in a bad faith action because, again, it's the parties that are suing for bad faith that are setting the damages. And that's why, and if I'll just, the Cawthorne court explained that Florida law protects insurance companies with the excess judgment rule. If consent judgments were enough to show that the causation, the protection would be eliminated. Insurers would not know whether an insured party and an injured party entered into a consent judgment as adversarials at an arm's length and in good faith or as friends making a strategic decision to undermine the insurance company's policy. Surely no court would eviscerate the well-standing or well-established safeguard without paying any attention to the gravity of this decision. And I think it's important, I think this answers your question, Your Honor. They footnoted in the opinion, furthermore, if a consent judgment did constitute a judgment here, then Florida courts would not have been so precise as carving out these narrow exceptions, right? So in Cuttingham and in Koblenz, plaintiffs would not need to get an insurance company to agree to try the bad faith case first, such as in Cuttingham, nor would it matter whether the insurer failed to defend its insured as the basis for Koblenz. Florida courts carved out these specific functional equivalents rather than merely just saying that a consent judgment is sufficient. Demonstrates that Florida courts construe judgments, quote, as narrowly as we did in this context. And I think that's the significant point if we go back to the basis for a consent judgment or the basis for whether we allow consent judgments to be the determining measure of damages in a bad faith act. It's because who's setting it? And the Cawthorne Court basically said, without knowing whether this is collusive, arm's length, whether it was as friends, we need to basically have the sexist judgment rule. And because the measure of damages in the bad faith action aren't litigated, there is no way to do that. So I think for those reasons and the reasons set forth in our brief and for the number of reasons that all the district judges have looked at this, have recognized that Cawthorne isn't binding, they thought it was very persuasive. We would ask that the court affirm summary judgment. Okay, very well. Thank you so much. Mr. Rockenbach, you've got five minutes. Sorry. Yep, yep, yep. Sorry. Judge Branch, please. Yes. Sorry. Yes, I did have one question. I know that Geico's position is that we don't need to certify a question to the Florida Supreme Court. But if we're trying to sort through the implications of Cawthorne, which depends upon Pereira, why wouldn't we go back and say different facts and you tell us whether every consent judgment is out? Why is that not a clean question that we would just say to the Florida Supreme Court, please put us out of our misery and answer the question? Yes, Your Honor. And I acknowledge the court that that's a valid question. It's an option for this court. Our position simply was, based on the precedence of Pereira and Jennings and the analysis that we thought was well reasoned by the Cawthorne court, that it was just not an issue that needed to go to Florida Supreme Court because we think they've already spoken on it. But I acknowledge that that is an option for the court. Can I ask you one more question before you sit down? And this is not a game of quiz show. If you don't know the answer, it's all good. But we have a recent decision from this court in a case called Pelaez, P-E-L-A-E-Z. Pelaez, yes, Your Honor. In which we said a stipulated judgment would be a way to obtain an excess judgment that could be used in a bad faith lawsuit against GEICO. Why is that not like flatly contrary to Cawthorne? And this is a published decision. Yes, so Pelaez, Your Honor, if you recall, I actually argued that decision on behalf of GEICO and Your Honor sat on the panel. And that was actually decided, that summary judgment was granted on the merits by the district judge and on Cawthorne because they had a consent judgment. And I think the statement in there, and I don't have it in front of me, I believe would have been referencing a stipulation between the parties, which would have included the insurance company, which falls right into what would essentially be a Cuttingham agreement. Got it. Okay, fair enough. Thank you, Your Honor. Yep, thank you. It's always great when you can say I was the one who argued that case. Yeah, and when you get to say you were on the panel. All right, so Mr. Rockenbach, five minutes. You're being most generous with five minutes, Your Honor. The very first thing you asked Judge Newsom, Mr. Thompson, was what's your best case, right? And later on, he talked about Pereira and cited a sentence that says, we reject Pereira's argument that the $4 million is an excess judgment because the amount is excess of the primary policy limits. We've previously stated that an excess judgment is defined as the difference between all available insurance coverage and the amount of the verdict recovered by the injured party. Now, if Pereira Court, if the Fuller Supreme Court was, if it really meant that an excess judgment had to be from a verdict, then it would have never written this paragraph because there was no verdict in Pereira. It was a stipulated judgment. So when they're asked to, you know, is this an excess judgment, they would have said this is not a judgment at all. This was a stipulated judgment. It wasn't from a verdict. And so it's not, we don't have to decide whether this is an excess judgment because it's not a judgment that supports a bad faith claim. So the answer to your first question about what is the best case they have, it's the best case we have is right here. And by reading it, it seems that Geico doesn't understand that Pereira Court was explaining that in Pereira the judgment was not excess because it was not in excess of all available coverage. And that's why it was, not because it was not a judgment. Okay, so a stipulated judgment can be a judgment. Also, in this particular situation, Geico could have said no. They agreed to this. They agreed to this proposal for the offer of judgment. They agreed to it being accepted. They had absolute control. In the initial brief, I pointed out where the Supreme Court has instituted a statement of insurance clients' rights that everyone has to sign, every insured has to sign. And it tells the insured, the insurance company has to provide you with a lawyer. And they are in control of the defense. The lawyer works for the insurance company. They are being instructed, they are doing as instructed by the insurance company. So nothing happens here without Geico's approval. So Geico approved of this, the acceptance of this offer of judgment. They say we're not a party to the judgment. Well, of course you're not. A proposal for settlement, an offer of judgment, is an offer of a judgment entered on that case. Geico is not a party to the case. So they're never going to be a party to the judgment that's being entered. They're a part of it because they're going to be held liable on the bad faith claim later. But they are not a party, and that is not an excuse. It's just a matter of fact that they can't be a party to it because it's a judgment and they aren't a party to the case. Lastly, this is not a consent judgment. This is a judgment entered pursuant to 768.79. It is a device created by the legislature to end cases early. And so it is a consent judgment is where people get together and decide something on the side, and they come up and they present it here as judge of consent judgment, and they've done it. This is something that is given to the insureds as the defendants. The plaintiff, the injured party, comes up with a number, in this case two numbers. They add it to a little more than $5 million, and they send it. There's no negotiating. They sent it over, and they said, here's $5.2 million. Take it or leave it. And if they don't take it, then we pile on attorney's fees on top of that when it's higher. So the insured is in a sticky wicket, and the insurance company has an obligation to decide what to do with it. In the record, it's 1-5 and 1-6. You will see that there was a proposal for settlement sent by Bennett early on in the case for $375,000. In response to that, GEICO sent a letter to McNamara and Warren and said, we're giving you a status of the case. We have received a proposal for settlement from Bennett for $375,000. There's nothing you need to do about this. We just want to keep you informed. So in that instance, they're keeping control. They're not even giving the insureds the chance to say what they want to do about it. And that's $375,000. And then three or four years later, when it's $5 million, GEICO walks this fine line and says, well, we're not agreeing to it. We're not saying, we don't know what to do. We gave you a lawyer. You do whatever you want, insureds. And that was wrong. They can't do that. They are in control. And if they're not in control, then they've breached the policy. So there's the analysis on that. Very well. Thank you. Thank you all. Oh, Judge Branch, do you have any further questions for Mr. Rockenbach? I do not, thank you. Okay. So thank everybody. Thanks for your patience with me in remembering and alternatively forgetting to ask Judge Branch if she had questions. We will submit that case, and court is in recess until tomorrow morning at 9 a.m. All rise. Thank you.